## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SMITH, as Next of Kin of Roberta Johnson, deceased, and on behalf of the beneficiaries of Roberta Johnson, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 2:20-cv-02104-TLP-atc |
| v. | ) | |
| | ) | JURY DEMAND |
| MIDTOWN CENTER FOR HEATLH AND REHABILITATION, LLC d/b/a Midtown Center for Health and Rehabilitation, and MC CONSULTING, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING IN PART MOTION TO COMPEL AND DIRECTING DEFENDANTS TO PRODUCE CERTAIN DOCUMENTS EN CAMERA

Plaintiff brings this healthcare liability action on behalf of her mother, Roberta Johnson, a former resident of Midtown Center for Health and Rehabilitation ("Midtown"), a facility owned, operated, and managed by Defendants.[1] (ECF No. 1-2 at PageID 9.) Plaintiff asserts claims for negligence under the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-101, et seq. (*Id.* at PageID 13–14.) The complaint alleges that Ms. Johnson endured sexual assault and poor hygiene while a Midtown resident. (*Id.* at PageID 13.)

Plaintiff now moves to compel discovery from Defendants under Rule 37 of the Federal Rules of Civil Procedure. (ECF No. 155.) Defendants have responded. (ECF No. 162.) And the Court held a motion hearing by video conference on March 22, 2022. (ECF No. 169.) For

---

[1] Ms. Johnson has since passed away. (ECF No. 97 at PageID 1335.)

the reasons below, the Court **DENIES IN PART** Plaintiff's motion to compel and **DIRECTS**

Defendants to produce certain documents en camera, as described further below.

## BACKGROUND

### I.    Procedural History

The discovery process has included acrimonious disputes since Defendants removed this

case from Shelby County Circuit Court in February 2020.  (ECF No. 1.)  The scheduling order

originally set a June 2021 discovery deadline and a trial in November 2021.  (ECF No. 50 at

PageID 412.)  In June 2021, the parties jointly moved to extend the scheduling order's deadlines

because they needed additional time to conduct depositions.  (ECF No. 83 at PageID 600.)  And

so the Court set the deadline for completing discovery and filing dispositive motions as October

1, 2021.  (ECF No. 84.)  Defendants moved for summary judgment timely.  (ECF No. 90.)  Over

the next month and a half, the parties filed more than fifty documents, including many discovery

motions.  (ECF Nos. 91–109, 112, 114–118, 120–21, 123–25, 127 & 130–143.)

Among these filings, both parties moved to exclude expert testimony (ECF Nos. 91 &

92), Plaintiff moved to strike Defendants' motion for summary judgment (ECF No. 93),

Defendants moved to continue the trial date (ECF Nos. 98, 101 & 109), Defendants moved to

quash a subpoena (ECF No. 130) and to preclude Plaintiff from relying on evidence in

responding to Defendants' summary judgment motion  (ECF Nos. 120, 131, 133 & 135), and

Plaintiff moved for sanctions against Defendants (ECF No. 134).  To resolve the parties'

discovery disputes, the Court conducted a motion hearing in November 2021.  (ECF Nos. 145 &

146.)

In broad terms, Defendants argued that Plaintiff waited until the last minute to provide

discovery and continued to produce documents after the October 1 discovery cut-off.  (ECF No.

146 at PageID 2223–24.)  Defendants sought to preclude Plaintiff from relying on such evidence in responding to Defendants' motion for summary judgment.  (ECF Nos. 120, 130, 131, 133 & 135.)  And Plaintiff argued that Defendants withheld relevant discovery and concealed evidence. (ECF No. 146 at PageID 2245.)  Plaintiff pointed to Memphis Police Department ("MPD") records of other reported instances of sexual assault at Midtown while Ms. Johnson resided there. (*Id.* at PageID 2231–32.)  Defendants also sought to continue the November 2021 trial date to conduct additional discovery.  (ECF Nos. 98, 101 & 109.)  Given the broad discovery Plaintiff now requests, Plaintiff curiously objected to the continuance.[2]  (ECF No. 102.)  The Court still granted the motion to continue the trial date.  (ECF No. 110.)

Plaintiff moved for sanctions almost a month after the Court granted the continuance. (ECF No. 134.)  The motion sought sanctions related to discovery requests Plaintiff sent Defendants in March 2021.  (*Id.* at PageID 2050.)  According to that motion, Defendants objected to some of those discovery requests as seeking privileged documents.  (*Id.* at PageID 2051.)  Plaintiff claimed that Defendants provided no materials responsive to Plaintiff's requests for (1) information and communications related to the investigation of Roberta Johnson's sexual assault, including internal communications and communications with the MPD, (2) documents related to investigations of abuse, mistreatment, or neglect of other residents, (3) documents

---

[2] During the November 2021 hearing, the Court expressed concerns related to Plaintiff's seemingly contradictory positions, objecting to continuing the trial only to turn around and request broad swaths of discovery from Defendants.  (ECF No. 146 at PageID 2229, 2231.) Plaintiff obtained the police reports before objecting to a continuance of the November 2021 trial date.  (ECF Nos. 102 at PageID 1413; 146 at PageID 2237.)  Plaintiff received the police reports on October 13 and 14, 2021.  (ECF No. 146 at PageID 2233.)  And Plaintiff provided the reports to Defendants on October 14 and 15.  (ECF Nos. 99 at PageID 1356; 146 at PageID 2233.)  But Plaintiff objected to continuing the November 2021 trial date.  (ECF No. 102 at PageID 1407–08.)  Similarly, the certificates of consultation in Defendants' motions to continue all indicate that Plaintiff would not agree to a continuance.  (ECF Nos. 98 at PageID 1341; 101 at PageID 1366; 109 at PageID 1491.)

3

related to government investigations during Ms. Johnson's residency and the preceding six months, (4) employee work schedules and timecards, (5) employee personnel file items, (6) visitor logs, and (7) reports on facility staffing.  (*Id.* at PageID 2050–51.)

## II.    November 2021 Hearing

As stated above, the Court conducted a hearing on the parties' discovery motions in November 2021.  (ECF Nos. 145 & 146.)  Among the motions resolved at that hearing, the Court denied Plaintiff's motion for sanctions (ECF No. 134) and denied Defendants' motions to strike various evidentiary items and affidavits offered in response to its summary judgment motion (ECF Nos. 120, 130, 131 & 133).

When addressing Plaintiff's motion for sanctions, the Court repeatedly emphasized that Plaintiff never moved to compel discovery before the discovery cutoff.  (ECF No. 146 at PageID 2232, 2262, 2264–68, 2296.)  The Court observed that the lack of a motion to compel "is a pretty significant hole" in Plaintiff's request for sanctions.  (*Id.* at 2232.)  Indeed, the Court explained that without moving to compel, Plaintiff had "an uphill battle" in seeking sanctions.  (*Id.*)  As the Court later noted, moving to compel is "a step that would have made [Plaintiff's] position . . . much stronger."  (*Id.* at PageID 2262.)  Defendants objected to Plaintiff's discovery requests and "took the position that [Plaintiff's initial request[s] [were] too broad."  (*Id.* at PageID 2265.)  Defendants took that position early and "stood by it."  (*Id.*)  And the Court explained that for the party seeking discovery, following such an objection, "[t]he ball is now in your court."  (*Id.*)  And Plaintiff did not move to compel or challenge Defendants' objections before moving for sanctions, thereby "skipping a step in the process."  (*Id.*)

The Court acknowledged Defendants' position that because they found the discovery requests objectionable, they would "stand by that [position] unless and until there's a motion to

compel" before revisiting the objections. (*Id.* at PageID 2267–68.) And because Plaintiff never moved to compel or otherwise challenged Defendants' objections to the discovery requests before seeking sanctions against Defendants for withholding evidence, the Court denied the motion for sanctions. (*Id.* at PageID 2296, 2311.)

At the hearing, Plaintiff requested the opportunity to conduct additional discovery. (ECF No. 146 at PageID 2234, 2241, 2245.) The Court informed Plaintiff that at most, the Court would permit Plaintiff to conduct "surgical discovery" to "get to the heart of what [Plaintiff] need[s] to get to." (*Id.* at PageID 2240.) And so Plaintiff requested to conduct discovery related to Defendants' notice about two alleged incidents of sexual assault that occurred about a month before Johnson's alleged assault. (*Id.* at PageID 2241.) Plaintiff also sought discovery about Defendants' "concealment or attempt to conceal any evidence, and information regarding . . . the personnel that are at issue." (*Id.*) To that end, Plaintiff sought to depose administrator Elaine Poston, director of nursing Christina Woodfork, and management company employee Mick Vujanovic. (*Id.* at PageID 2241, 2246.) Plaintiff's counsel stated at the hearing that the need for these depositions arose after Plaintiff received the MPD reports and learned about the other reported incidents of alleged sexual assault from Midtown residents. (*Id.* at PageID 2246.)

After expressing concerns about opening Pandora's box, the Court found that permitting Plaintiff to conduct "limited discovery" would not greatly prejudice Defendants. (*Id.* at PageID 2248, 2251.) And so the Court decided to permit Plaintiff "to take a handful of depositions" to address the issues raised by the new police reports. (*Id.* at PageID 2252, 2259.) The Court clarified that Plaintiff "is focused on the two . . . alleged assaults that happened at the same facility," and "what did [the deponents] know and when did they know it." (*Id.* at PageID 2248–49.) And Plaintiff agreed to limit the scope of the depositions to Defendants' investigations into

reports of alleged sexual assault by Johnson and two other Midtown residents, Jean Shook and Sheila Anderson.[3]  (*Id.* at PageID 2241, 2261, 2269, 2271–72.)

Counsel for Defendants later asked if the Court was reopening written discovery.  (*Id.* at PageID 2283.)  The Court stated that "it sounds like [the parties] are at the point of . . . taking depositions.  (*Id.*)  The Court then asked Plaintiff's counsel if Plaintiff intended to seek any additional documents.  (*Id.*)  And Plaintiff's counsel responded that Plaintiff would seek documents "only from requests that [Plaintiff] had already made."  (*Id.*)  This category included discovery items underlying Plaintiff's motion for sanctions, including employee timecards and personnel files.  (*Id.* at PageID 2283–85.)  The Court clarified that it was not extending the deadlines for written discovery.  (*Id.* at PageID 2286.)

The Court explained that it would not allow Plaintiff to seek categories of discovery that Plaintiff has known about but chose not to pursue until Defendants moved for summary judgment.  (*Id.* at PageID 2287.)  The Court stated that it would not permit Plaintiff to obtain discovery "that was available already, and [Plaintiff] could have pursued it," because Plaintiff "could have filed motions to compel . . . to try to get that information earlier in the process." (*Id.*)  The Court pointed out "the problem" with Plaintiff's requests for documentary evidence, emphasizing that "[t]here is a process to get these things," and a party cannot "wait until [the opposing party] filed a motion for summary judgment and then say, now, wait just a minute, there's all this [evidence] that you held onto that you didn't give us."  (*Id.* at PageID 2288.)  The Court again observed that Plaintiff "skipped a step" by not seeking to compel discovery before the written discovery deadline, "an important step in the process of litigating [a] case."  (*Id.*) And so the Court stated that it would not "start rehashing" Plaintiff's original discovery requests.

---

[3] The Court further discusses the scope of Plaintiff's depositions below.

(*Id.*)

The Court acknowledged that Plaintiff "should be entitled to conduct some additional discovery" based on the issues raised by the MPD reports about the two other residents at Midtown who alleged instances of sexual assault. (*Id.*)  But the Court explicitly stated that it was not permitting the parties to "go back and look at everything [they] ever filed and kind of start [the discovery process] over." (*Id.* at PageID 2288–89.)  Even after this explanation, Plaintiff's counsel continued to request personnel files and argue about their significance. (*Id.* at PageID 2292–93.)  And so the Court emphasized that Plaintiff "knew about Ms. Johnson, and [Plaintiff] knew about these employees before the [October 2021] discovery cut-off.  Long before." (ECF No. 146 at PageID 2292–93.)  And "[n]one of that has changed with these . . . Memphis Police [records]" related to the alleged other sexual assaults. (*Id.* at PageID 2293.)  The Court pointed out that Plaintiff's "theory of the case all along has been that [Defendants'] facility allowed a sexual assault to occur to [Ms. Johnson]." (*Id.*)  Nothing prevented Plaintiff from seeking discovery about Defendants' personnel and other individuals with access to Ms. Johnson before the discovery deadline. (*Id.*)  The Court stated that Plaintiff "could have litigated all of that during the course of the summer" before the discovery deadline passed. (*Id.*)

In sum, the Court decided that "there are some issues that [Plaintiff] didn't litigate before," and Plaintiff missed the window to conduct discovery on those issues. (*Id.* at PageID 2294.)  As the Court noted, "that train [has] left the station." (*Id.*)  In fact, the Court stated that Plaintiff cannot "go back and say, well, now that you mention it, this would have been nice to know." (*Id.*)  The Court stated that the parties could bring to the Court's attention other issues related to specific discovery requests, such as the timecards and personnel files. (*Id.*)

Because both parties sought to conduct additional depositions, the Court extended the

7

deadline for conducting depositions through April 15, 2022, and the deadline for addressing any expert issues—including re-deposing experts, if necessary—through May 31, 2022. (ECF Nos. 145 & 146.)  And as described above, the Court limited the scope of some of these depositions. (ECF No. 146 at PageID 2246.)  In early March 2022, Plaintiff filed notices of depositions for Christina Woodfork, Elayne Poston, and Mick Vujanovic, the first of which was set for March 10, 2022. (ECF Nos. 152, 153 & 154.)  That same day, Plaintiff filed this motion to compel.[4] (ECF No. 155.)

## III.    Motion to Compel

Plaintiff moves to compel discovery related to "the investigation of Roberta Johnson's sexual assault, the investigation of the assaults of two (2) other female residents at Midtown during the same time period, select items from employee personnel files, and electronic timecards."  (ECF No. 155 at PageID 2340.)  There is significant overlap between these requests and the requests Plaintiff made at the November 2021 hearing, which the Court addressed above.

After the Court's November 2021 hearing, Plaintiff sought deposition dates from Defendants for Woodfork, Poston, and Vujanovic, and requested "that these individuals bring to their depositions all correspondence they provided to and received from the Memphis Police

---

[4] Plaintiff filed the motion to compel on March 1, 2022. (ECF No. 155.)  Plaintiff did not label the motion to compel an "emergency motion," and it does not request a hearing.  But Plaintiff contacted the Court's case manager to request a hearing before the deposition set for March 10, 2022.  Of course, the local rules give the non-moving party fourteen days to respond to a motion to compel.  *See* LR 7.2(a)(1)(2).  And Plaintiff did not properly request a hearing as required by Local Rule.  *See* LR 7.2(d) ("If counsel desires a hearing on the motion before the court, counsel shall request the hearing in the motion or response and shall explain why a hearing would be helpful or necessary.").  What is more, Plaintiff apparently expected the Court to rule on the motion to compel within nine days, despite the fourteen-day window for Defendants to respond and the fact that the motion and its exhibits consisted of one hundred and seventy pages.  The Court did accommodate a hearing on the motion to compel on March 22, 2022. (ECF No. 169.) And Plaintiff has filed updated notices for the three depositions. (ECF Nos. 166, 167 & 168.)

Department ('MPD') relating to the investigations" involving Johnson, Anderson, and Shook. (*Id.* at PageID 2342.) According to the motion to compel, Plaintiff also requested "timecards and personnel files for employees of Defendants' facility, but dramatically narrowing the scope of that request to November 1, 2018 through January 17, 2019." (*Id.*)

In January 2022, Defendants provided a privilege log identifying purportedly protected documents that were otherwise responsive to Plaintiff's discovery requests. (ECF Nos. 155 at PageID 2343; 155-2 at PageID 2378–406.) And Defendants objected to producing the requested timecards and personnel files. (ECF Nos. 155 at PageID 2343; 155-1 at PageID 2358.)

The privilege log lists eighty-five items. (ECF No. 155-2.) And Plaintiff provided a numbered list of these items. (ECF No. 155-3.) Items 1–40 relate to Defendants' Quality Assurance Investigative File for Roberta Johnson. (*Id.* at PageID 2408–26.) Items 41–66 relate to Defendants' Quality Assurance Investigative File for Jean Shook. (*Id.* at PageID 2426–37.) And items 67–85 relate to Defendants' Quality Assurance Investigative File for Sheila Anderson. (*Id.* at PageID 2437–44.) Plaintiff requests items 1, 10–16, 30–35, 39–48, 50–74, 76–85. (ECF No. 155 at PageID 2348.) Plaintiff asserts that these items are not privileged, and that Defendant should produce them. (*Id.*)

The Court held a hearing by video conference on Plaintiff's motion to compel on March 22, 2022. (ECF No. 169.)

## LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. Under Rule 26(b)(1),

[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

> parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Under Rule 37 of the Federal Rules of Civil Procedure, a party may move to compel a discovery response if a party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citing *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996)); *see also* Lavado v. Keohane, 992 F.2d 601, 604 (6th Cir. 1993) ("It is well established that the scope of discovery is within the sound discretion of the trial court.").  "A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery."  *Pittman*, 901 F.3d at 642 (quoting *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000)).  And district courts often deny discovery motions filed after discovery closes.  *See id.* at 642–43 (collecting cases).  "This is especially true where the moving party had the information it needed to file the discovery motion and its late filing would prejudice the other party."  *Id.* at 643 (citations omitted).

## ANALYSIS

### I.    Late Discovery Requests

Plaintiff requests many items of discovery.  But several of Plaintiff's requests go beyond the scope of the discovery this Court permitted at the November 2021 hearing.  The motion to compel requests two broad categories of discovery.  First, Plaintiff seeks timecards and personnel files.  Second, Plaintiff seeks items from Defendants' privilege log.  But included

within this second category of allegedly privileged documents are many items from Defendants'

investigative file on Ms. Johnson and other items Plaintiff chose not to pursue before the

discovery deadline.  (ECF No. 155-2.)  The Court determined at the November 2021 hearing that

Plaintiff could not obtain that discovery.  (ECF No. 146.)

At that November hearing, the Court permitted Plaintiff to conduct only a narrow

category of discovery.  The Court stated that Plaintiff could conduct discovery related to the

issues raised by the MPD reports about allegations of sexual assault by two other Midtown

residents—not Ms. Johnson.  (*Id.* at PageID 2288.)  And the "surgical discovery" the Court

contemplated did not extend far.  (*Id.* at PageID 2240.)  As the Court explained, Plaintiff cannot

rehash her original discovery requests.  (*Id.* at PageID 2288.)  Nor can Plaintiff seek categories

of discovery previously available but not pursued.  (*Id.* at PageID 2287.)  Plaintiff had a chance

to take steps to obtain that discovery before the written discovery deadline.  But Plaintiff chose

not to do so.  And now "that train [has] left the station."  (*Id.* at PageID 2294.)

The timecards and personnel files serve as a perfect example.  The Court made its

position on these items clear at the November 2021 hearing.[5]  In essence, Plaintiff made

discovery requests, Defendants objected, and Plaintiffs did not follow up until after the discovery

deadline passed and Defendants moved for summary judgment.  As the Court pointed out,

Plaintiff's "theory of the case all along has been that [Defendants'] facility allowed a sexual

assault to occur to [Ms. Johnson]."  (*Id.*)  Plaintiff's complaint confirms as much, alleging that

Defendants "fail[ed] to protect Roberta Johnson from sexual assault."  (ECF Nos. 1-2 at PageID

---

[5] At least, the Court believed it made its position on the timecards and personnel files clear.
Evidently, Plaintiff, though, failed to understand the Court's rulings, because Plaintiff's motion
to compel regurgitates the same arguments the Court already addressed at the November 2021
hearing.  Predictably, the Court finds these arguments the second time around just as
unpersuasive.

16.)  And according to Plaintiff, the timecards and personnel files will help determine who had access to Ms. Johnson.  But nothing prevented Plaintiff from engaging in the discovery process to obtain these timecards and personnel files before the discovery deadline passed.

The Court determined that Plaintiff's window to conduct this discovery had closed.  As the Court explained, "that train [has] left the station."  (ECF No. 146 at PageID 2294.)  Plaintiff had a chance to litigate such matters prior to the discovery deadline.  And the Court made clear at the November 2021 hearing that it would not provide Plaintiff another bite at the apple on those categories of discovery.  (*Id.* at PageID 2288–89, 2292–94.)

Plaintiff's motion to compel essentially ignores everything the Court said about Plaintiff's requests for the timecards and personnel files.  Plaintiff makes the same arguments the Court addressed at the November 2021 hearing.  And so the Court **DENIES** Plaintiff's request for the timecards and personnel files.

The same rationale applies to other discovery items related to Defendants' investigation of Ms. Johnson's claims.  As the Court emphasized at the November 2021 hearing, Plaintiff "knew about Ms. Johnson, and [Plaintiff] knew about these employees before the discovery cut-off.  Long before."  (ECF No. 146 at PageID 2292–93.)  And "[n]one of that has changed with these . . . Memphis Police [records]" related to the other two alleged assaults.  (*Id.* at PageID 2293.)

As stated above, items on the privilege log numbered 1–40 pertain to Ms. Johnson.  (ECF No. 155-3 at PageID 2408–26.)  Of these items, Plaintiff seeks items numbered 1, 10–16, 30–35, and 39–40.  (ECF No. 155 at PageID 2348.)  Defendants maintain that these items are privileged.  (ECF No. 162 at PageID 2535.)  But privilege aside, the items from Defendants' investigative file for Ms. Johnson fall beyond the scope of the "surgical discovery" the Court has permitted

Plaintiff to conduct.  Had Plaintiff pushed for this discovery earlier in these proceedings, Plaintiff might have obtained these documents before the discovery deadline.  Plaintiff chose not to pursue those categories of discovery timely.  Plaintiff did not challenge Defendants' objections and assertion of privilege until after the deadline passed and Defendants moved for summary judgment.  So the Court will not permit Plaintiff to conduct discovery related to Defendants' investigative file on Ms. Johnson.  The Court therefore **DENIES** Plaintiff's requests for the items on Defendants' privilege log numbered 1, 10–16, 30–35, and 39–40.

What is more, several items Plaintiff requests from Defendants' privilege log fall into the category of previously available discovery Plaintiff chose not to pursue before the passage of the discovery deadline.  And many requests go beyond the scope of discovery the Court permitted Plaintiff to conduct.  For example, item 15 is "a room roster of facility residents" that might "identify potential witnesses to Ms. Johnson's assault."  (*Id.* at PageID 2351.)  And items 32, 35, and 61 consist of "nursing staff schedules, visitor logs from Ms. Johnson's stay, and the shift assignment sheet from Ms. Shook's investigation."  (ECF No. 155 at PageID 2351.)  Similarly, items 30, 31, 50, 51, 52, 65, 76, 77, and 78 contain "protocol documents" and "policies" or "guidelines."  (*Id.*)  Except for the shift assignment sheet related to Ms. Shook, Plaintiff could have taken steps to obtain these materials long ago.  And all of these requests, the shift assignment sheet included, extend beyond the scope of discovery the Court permitted at the November 2021 hearing.

Plaintiff also seeks items 47, 48, 53–59, 63, 73, 74, 80, and 82–84, which consist of medical records for Ms. Anderson and Ms. Shook.  (ECF No. 155 at PageID 2352.)  Plaintiff seeks these records to determine whether Shook or Anderson "were diagnosed with and treated for any sexually transmitted disease, including trichomonas."  (*Id.*)  And so this request also

sidesteps this Court's ruling at the November 2021 hearing, which limited the scope of Plaintiff's inquiry to Defendants' notice and investigation of the alleged assaults reported by Shook and Anderson. (ECF No. 146 at PageID 2287.) What is more, Plaintiff without support seeks to submit an interrogatory about other residents and employees at Midtown who were diagnosed with or treated for the same sexually transmitted disease as Ms. Johnson. (*Id.* at 2353.) But the Court already ruled Plaintiff could not conduct that discovery at the November 2021 hearing. (ECF No. 146 at PageID 2287.) In fact, Plaintiff's counsel affirmatively stated that Plaintiff would not seek that discovery. (*Id.*) Again, Plaintiff's motion to compel ignores this Court's rulings at the November 2021 hearing. For the most part, Plaintiff's motion to compel acts as though that hearing never occurred.

The Court therefore **DENIES** Plaintiff's request for medical records for Ms. Shook and Ms. Anderson. And the Court also **DENIES** Plaintiff's requests for the other discovery items addressed above. All of these requests seek documents beyond the narrow category of discovery the Court permitted at the November 2021 hearing.

Keeping in mind the above, the Court will address Plaintiff's remaining discovery requests, which correspond to items 41–46, 60, 62, 64, 66–72, 79, 81, and 85. The Court will now examine whether the remaining items Plaintiff requests are privileged.

## II.    Quality Assurance Privilege

The next question is whether the items on Defendants' privilege log fall within the healthcare quality assurance privilege under Tennessee law. The parties dispute whether Tenn. Code Ann. ("T.C.A.") § 68-11-272 applies to the items on Defendants' privilege log. There is no dispute however as to the statute's applicability to Defendants.

### A.     The Statute

For starters, "T.C.A. § 68-11-272(c)(1) creates a state law privilege for Quality

Improvement Committees ('QICs') created by healthcare providers to, among other things, make

sure healthcare providers are in compliance with state and federal law." *Allgood v. Baptist*

*Mem'l Med. Grp., Inc.*, No. 19-2323-SHM-tmp, 2020 WL 86455, at *2 (W.D. Tenn. Jan. 7,

2020), *aff'd*, 2020 WL 821381 (W.D. Tenn. Feb. 19, 2020).  This privilege "protects the

'records' of QICs, as well as statements made to QICs during an investigation." *Id.* (citing

T.C.A. § 68-11-272(c)(1)).

The statute defines "records" to mean "records of interviews and all reports, incident

reports, statements, minutes, memoranda, charts, statistics, evaluations, critiques, test results,

corrective actions, disciplinary actions, and any and all other documentation generated by or in

connection with activities of a QIC . . . ."  Tenn. Code Ann. § 68-11-272(b)(5).  And the statute

provides a long list of activities a QIC may engage in, including: (1) "Evaluation and

improvement of the quality of healthcare services rendered"; (2) "Determination that health

services rendered were professionally indicated or were performed in compliance with the

applicable standards of care"; (3) "Evaluation of the qualifications, credentials, competence and

performance of healthcare providers or actions upon matters relating to the discipline of any

individual healthcare provider";  (4) "Reduction of morbidity or mortality"; (5) "Evaluation of

whether facilities are being properly utilized"; (6) "Evaluation of the quantity, quality and

timeliness of healthcare services rendered to patients"; (7) "Evaluation, review or improvement

of methods, procedures or treatments being utilized"; and (8) "Activities to determine the

healthcare organization's compliance with state or federal regulations."  Tenn. Code Ann. § 68-

11-272(b)(4).

"To encourage the improvement of patient safety, the quality of patient care, and the evaluation of the quality, safety, and necessity of healthcare services, the General Assembly stated that 'certain protections' must be provided to all who participate in or provide information to a QIC." *Pinkard v. HCA Health Servs. of Tenn., Inc.*, 545 S.W.3d 443, 452 (Tenn. Ct. App. 2017) (citing Tenn. Code Ann. § 68-11-272(a)). And "[t]o further protect those who participate in a QIC or provide information or testimony to a QIC, the General Assembly mandated that all records of a QIC, including testimony or statements by persons relating to activities of the QIC, are not only confidential and privileged, they are protected from discovery or admission into evidence." *Id.* (citing Tenn. Code Ann. § 68-11-272(c)(1)). "The purpose of this privilege is to allow healthcare organizations to freely examine how they can improve their services without fear that candid statements will be used against them." *Allgood*, 2020 WL 86455, at *2 (citing *Pinkard*, 545 S.W.3d at 452). As the Court in *Pinkard* recognized, this privilege "protects an overriding interest in patient safety, and it achieves that objective by encouraging candor within a hospital's quality improvement process." *Pinkard*, 545 S.W.3d at 454 (citing Tenn. Code Ann. § 68-11-272(a)).

But the statute contains an "original source" exception, under which "any information, documents or records that were not produced for use by a QIC, or which were not produced by persons acting on behalf of a QIC, and are available from original sources, are not immune from discovery or admission into evidence even if the information was presented during a QIC proceeding." *Id.* at 452 (citing Tenn. Code Ann. § 68-11-272(c)(2)). What is more, "persons who provided testimony or information to or as part of a QIC are not exempt from discovery and are not prohibited from testifying as to their knowledge of facts or their opinions." *Id.* at 453 (citing Tenn. Code Ann. § 68-11-272(c)(2)). And so the statute "does not prohibit [a litigant]

from obtaining evidence that goes to the heart of the case from the original sources." *Id.*
In sum, "under Tenn. Code Ann. § 68-11-272(c)(2), documents not produced specifically for use by a QIC, and [which] are otherwise available from original sources, are not immune from discovery or admission into evidence even if the information was presented during a QIC proceeding." *Id.* at 448. But the parties disagree about meaning of the terms "original source."

### B.   Plaintiff's Requests

As stated above, Defendants' privilege log lists eighty-five items, and Plaintiff requests items 1, 10–16, 30–35, 39–48, 50–74, 76–85. (ECF No. 155 at PageID 2348.) Plaintiff asserts that these items fall outside Defendants' claimed privilege. But the Court need only address whether this privilege applies to items 41–46, 60, 62, 64, 66–72, 79, 81, and 85. These remaining records can be sorted into a few general categories: emails to administrator Poston (items 41–44, 67–71 ); reports by administrator Poston (item 45); investigative statements (items 62 & 81); handwritten QIC investigation notes (items 64, 66, & 85); State of Tennessee incident reports (items 46 & 72); and Midtown complaint/grievance reports (items 60 & 79).

Defendants attached an affidavit from Elayne Poston to their response. (ECF No. 162-9.) Poston states in the affidavit that she began an internal quality assurance investigation after discovery of Roberta Johnson's sexually transmitted disease. (*Id.* at PageID 2574.) According to the affidavit, "[t]he purpose of such investigation was to conduct a fair investigation into the identification and assessment of if and how Ms. Johnson obtained the sexually transmitted disease while a resident at Midtown." (*Id.* at PageID 2574–75.) And the affidavit also states that "[a] quality insurance investigation is designed to assess and evaluate quality, identify problems or issues with care, if any, design quality improvement activities to overcome such issues, and follow-up monitoring to make sure the activities and care change as needed." (*Id.* at PageID

2575.)

Despite Plaintiff's contentions otherwise, this Court finds that the reasons and goals of the investigation listed by Poston are all valid QIC functions under the Tennessee statute. *See* Tenn. Code Ann. § 68-11-272(b)(4). Lastly, Poston's affidavit states that she personally "gathered and prepared" all "documents and information used in the quality assurance investigation," and she "intended [such documentation] to be seen only by Midtown's attorneys." (ECF No. 162-9 at PageID 2575.) The affidavit concludes that the items on the privilege log constitute privileged materials that should remain confidential. (*Id.*)

Having reviewed Plaintiff's remaining discovery requests, the Court finds that the emails to Poston, Poston's reports, the investigative statements, and handwritten QIC investigation notes fall within the scope of Tenn. Code Ann. § 68-11-272(c)(1). As explained above, *Pinkard* noted that the QIC privilege extends to "all records of a QIC, including testimony or statements by persons relating to activities of the QIC." 545 S.W.3d at 452 (citing Tenn. Code Ann. § 68-11-272(c)(1)). And the statute defines "records" broadly, including "records of interviews and all reports, incident reports, statements," and "any and all other documentation generated by or in connection with activities of a QIC." Tenn. Code Ann. § 68-11-272(b)(5). This means that the records Plaintiff seeks here fall within the QIC privilege. And so Plaintiff cannot compel discovery of them unless the records fit within the original source exception. *See Pinkard*, 545 S.W.3d at 452.

As relevant here, *Pinkard* establishes two prerequisites for the original source exception to apply. First, the exception applies only to "documents not produced specifically for use by a QIC." *Id.* at 448 (citing Tenn. Code Ann. § 68-11-272(c)(2)). Second, the exception applies only if those documents "are otherwise available from original sources." *Id.* (citing Tenn. Code

Ann. § 68-11-272(c)(2)).  With that in mind, the original source exception does not apply to administrator Poston's report, the investigative statements she gathered, and the handwritten notes.  Each of these records were produced specifically for the QIC, and nothing suggests any of these records are available from other sources.  That said, if the privilege log identifies witnesses, nothing prevents Plaintiff from interviewing those potential witnesses—they just cannot get the records.

It is unclear whether the "original source" exception applies to the emails to Poston (items 41–44, 67–71).  Ostensibly, the sender of the emails could make the emails available.  And so these documents qualify as "available from original sources."  *See Pinkard*, 545 S.W.3d at 448.  But for the original source exception to apply, the documents must also qualify as "documents not produced specifically for use by a QIC."  *Id.* at 448 (citing Tenn. Code Ann. § 68-11-272(c)(2)).  The Court does not have sufficient information to determine whether the emails satisfy this second requirement.  During the hearing on Plaintiff's motion to compel, counsel for Defendants offered to produce any documents listed on the privilege log en camera.  (ECF No. 169.)  And so the Court **DIRECTS** Defendants to produce the emails en camera.  The Court will rule by separate order on whether the QIC privilege applies to these items.

Similarly, the record leaves unclear whether the complaint/grievance reports (items 60 & 79) and the State of Tennessee incident reports (items 46 & 72) fall under the QIC privilege in Tenn. Code Ann. § 68-11-272(c)(1) or the original source exception in Tenn. Code Ann. § 68-11-272(c)(2).  And so the Court also **DIRECTS** Defendants to produce these reports en camera.  And the Court will rule on these items separately, as well.

In accordance with the analysis above, the Court **DENIES** Plaintiff's other remaining discovery requests (items 45, 62, 64, 66, 81 & 85).

### III.    Scope of Depositions

At the hearing on the motion to compel, Plaintiff's counsel inexplicably requested to conduct the scheduled depositions without limitations, although the Court covered this topic at the November 2021 hearing and established firm limits on these depositions.  As explained above, the Court decided to permit Plaintiff "to take a handful of depositions" to address the issues raised by the new police reports.  (ECF No. 146 at PageID 2252, 2259.)  As stated above, the Court did not give Plaintiff carte blanche to conduct discovery about Ms. Johnson.  Rather, to avoid "opening Pandora's box," the Court limited Plaintiff to "focus[ing] on the two . . . alleged assaults that happened at the same facility," and "what did [the deponents] know and when did they know it."  (*Id.* at PageID 2248–49.)  The Court provided clear limitations on the scope of Plaintiff's depositions, precluding Plaintiff from raising certain issues.

Take the Court's limitations on Mick Vujanovic's deposition.  Plaintiff stated that "Mr. Vujanovic is going to have a little more information germane to the management company's relationship to the facility, which has been raised as an issue in the summary judgment motion, the MC Consulting."  (ECF No. 146 at PageID 2270.)  Counsel for Defendants emphasized that Plaintiff could have obtained discovery on the relationship between the Midtown facility and MC Consulting before the discovery deadline.  (*Id.* at PageID 2278.)  Defendants argued that the Court should not allow Plaintiff to depose Vujanovic about the management of the facility.  (*Id.*)  According to Defendants, "[t]his is a do over."  (*Id.*)  Plaintiff's counsel clarified that she would ask Vujanovic about "who his employer is and his connection to the facility and how he became involved in the investigation with Ms. Johnson and what he knew from the prior two, if anything."  (*Id.*)

The Court stated that it would permit Plaintiff to ask Vujanovic about his employment,

whether he found out about Ms. Johnson's alleged assault or the other two residents' reports of similar allegations.  (*Id.* at PageID 2279.)  But the Court stated that "[i]f [Plaintiff] wanted to prove through [Vujanovic] that MC Consultants controlled Midtown, that's what the first round of discovery was for."  (*Id.*)  Plaintiff's counsel agreed.  (*Id.*)

The Court then stated that "the only other question is whether there was an alleged assault at Midtown that was never reported anywhere."  (*Id.* at PageID 2280.)  Put another way, the Court stated that Plaintiff could ask if Defendants knew about allegations of sexual assaults by residents and then never reported them to the police between February 2018 and January 2019.  (*Id.* at PageID 2282.)

Plaintiff's counsel also stated, "I think I understand the scope that you're telling us we need to adhere to."  (*Id.* at PageID 2281.)  Evidently, Plaintiff's counsel did not understand. Without briefing the issue, Plaintiff's counsel requested to conduct depositions with no limitations at the hearing on Plaintiff's motion to compel.  Plaintiff's counsel provided no reasons for the Court to revisit its prior determination of the proper scope of these depositions. Again, Plaintiff's counsel brazenly ignores this Court's prior findings and rulings.  The Court therefore **DENIES** Plaintiff's request to expand the scope of these depositions.

## CONCLUSION

For the reasons above, the Court **DENIES IN PART** Plaintiff's motion to compel and **DIRECTS** Defendants to produce certain documents en camera (items 41–44, 46, 60, 67–72 & 79) within seven days from the entry of this order.

**SO ORDERED**, this 25th day of March, 2022.

 s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE