IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CYNTHIA SMITH, as Next of Kin of Roberta Johnson, deceased, and on behalf of the beneficiaries of Roberta Johnson, </br></br>       Plaintiff, </br></br> v. </br></br> MIDTOWN CENTER FOR HEATLH AND REHABILITATION, LLC d/b/a Midtown Center for Health and Rehabilitation, and MC CONSULTING, LLC, </br></br>       Defendants. | No. 2:20-cv-02104-TLP-atc </br></br> JURY DEMAND |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL**

Plaintiff moved to compel discovery under Rule 37 of the Federal Rules of Civil Procedure. (ECF No. 155.) Defendants responded. (ECF No. 162.) After a March 2022 hearing on the motion, the Court denied a significant portion of Plaintiff's discovery requests. (ECF Nos. 169 & 170.) But the Court directed Defendants to produce certain items en camera, because the Court could not determine whether they fell under Tennessee's healthcare quality assurance privilege, Tenn. Code Ann. § 68-11-272. (*Id.* at PageID 2658.) The Court directed Defendants to produce en camera emails to administrator Poston (items 41–44, 67–71), complaint/grievance reports (items 60 & 79), and State of Tennessee incident reports (items 46 & 72). And Defendants have done so. (ECF No. 171.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel as to these remaining discovery requests.

I.      **The Privilege**

As the Court observed in the order denying in part Plaintiff's motion to compel, "[t]he parties dispute whether Tenn. Code Ann. ("T.C.A.") § 68-11-272 applies to the items on Defendants' privilege log." (ECF No. 170 at PageID 2653.) The lone remaining question is the applicability of the healthcare quality assurance privilege to the emails to administrator Poston (items 41–44, 67–71), complaint/grievance reports (items 60 & 79), and State of Tennessee incident reports (items 46 & 72).

Earlier the Court explained the parameters of the healthcare quality assurance privilege under Tennessee law:

> For starters, "T.C.A. § 68-11-272(c)(1) creates a state law privilege for Quality Improvement Committees ('QICs') created by healthcare providers to, among other things, make sure healthcare providers are in compliance with state and federal law." *Allgood v. Baptist Mem'l Med. Grp., Inc.*, No. 19-2323-SHM-tmp, 2020 WL 86455, at *2 (W.D. Tenn. Jan. 7, 2020), *aff'd*, 2020 WL 821381 (W.D. Tenn. Feb. 19, 2020). This privilege "protects the 'records' of QICs, as well as statements made to QICs during an investigation." *Id.* (citing T.C.A. § 68-11-272(c)(1)).
>
> The statute defines "records" to mean "records of interviews and all reports, incident reports, statements, minutes, memoranda, charts, statistics, evaluations, critiques, test results, corrective actions, disciplinary actions, and any and all other documentation generated by or in connection with activities of a QIC . . . ." Tenn. Code Ann. § 68-11-272(b)(5). And the statute provides a long list of activities a QIC may engage in, including: (1) "Evaluation and improvement of the quality of healthcare services rendered"; (2) "Determination that health services rendered were professionally indicated or were performed in compliance with the applicable standards of care"; (3) "Evaluation of the qualifications, credentials, competence and performance of healthcare providers or actions upon matters relating to the discipline of any individual healthcare provider"; (4) "Reduction of morbidity or mortality"; (5) "Evaluation of whether facilities are being properly utilized"; (6) "Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients"; (7) "Evaluation, review or improvement of methods, procedures or treatments being utilized"; and (8) "Activities to determine the healthcare organization's compliance with state or federal regulations." Tenn. Code Ann. § 68-11-272(b)(4).
>
> "To encourage the improvement of patient safety, the quality of patient care,

and the evaluation of the quality, safety, and necessity of healthcare services, the General Assembly stated that 'certain protections' must be provided to all who participate in or provide information to a QIC." *Pinkard v. HCA Health Servs. of Tenn., Inc.*, 545 S.W.3d 443, 452 (Tenn. Ct. App. 2017) (citing Tenn. Code Ann. § 68-11-272(a)). And "[t]o further protect those who participate in a QIC or provide information or testimony to a QIC, the General Assembly mandated that all records of a QIC, including testimony or statements by persons relating to activities of the QIC, are not only confidential and privileged, they are protected from discovery or admission into evidence." *Id.* (citing Tenn. Code Ann. § 68-11-272(c)(1)). "The purpose of this privilege is to allow healthcare organizations to freely examine how they can improve their services without fear that candid statements will be used against them." *Allgood*, 2020 WL 86455, at *2 (citing *Pinkard*, 545 S.W.3d at 452). As the Court in *Pinkard* recognized, this privilege "protects an overriding interest in patient safety, and it achieves that objective by encouraging candor within a hospital's quality improvement process." *Pinkard*, 545 S.W.3d at 454 (citing Tenn. Code Ann. § 68-11-272(a)).

(ECF No. 70 at PageID 2654–55.)

The Court also examined the scope of the "original source" exception to the healthcare quality assurance privilege:

> [T]he statute contains an "original source" exception, under which "any information, documents or records that were not produced for use by a QIC, or which were not produced by persons acting on behalf of a QIC, and are available from original sources, are not immune from discovery or admission into evidence even if the information was presented during a QIC proceeding." [*Pinkard*, 545 S.W.3d] at 452 (citing Tenn. Code Ann. § 68-11-272(c)(2)). What is more, "persons who provided testimony or information to or as part of a QIC are not exempt from discovery and are not prohibited from testifying as to their knowledge of facts or their opinions." *Id.* at 453 (citing Tenn. Code Ann. § 68-11-272(c)(2)). And so the statute "does not prohibit [a litigant] from obtaining evidence that goes to the heart of the case from the original sources." *Id.* In sum, "under Tenn. Code Ann. § 68-11-272(c)(2), documents not produced specifically for use by a QIC, and [which] are otherwise available from original sources, are not immune from discovery or admission into evidence even if the information was presented during a QIC proceeding." *Id.* at 448.

(ECF No. 70 at PageID 2655–56.) The Court also noted that "*Pinkard* establishes two prerequisites for the original source exception to apply." (*Id.* at PageID 2657.) First, the exception applies only to "documents not produced specifically for use by a QIC." *Pinkard*, 545 S.W.3d at 448 (citing Tenn. Code Ann. § 68-11-272(c)(2)). Second, the exception applies only

3

if those documents "are otherwise available from original sources." *Id.* (citing Tenn. Code Ann. § 68-11-272(c)(2)).

## II. Plaintiff's Remaining Discovery Requests

As the Court's earlier order shows, the privilege analysis contains two steps. First, the Court must determine whether the documents fall within the scope of Tenn. Code Ann. § 68-11-272(c)(1). If not, the documents are not protected by the quality assurance privilege. But if the documents do fall within the scope of that privilege, the Court must then determine whether the original source exception in Tenn. Code Ann. § 68-11-272(c)(2) applies. (ECF No. 170 at PageID 2657–58.)

The Court determined that the emails to Poston (items 41–44, 67–71) fall within the scope of Tenn. Code Ann. § 68-11-272(c)(1). (*Id.* at PageID 2657.) But the Court could not determine whether the original source exception applied. (*Id.* at PageID 2658.) The Court also found that "the record leaves unclear whether the complaint/grievance reports (items 60 & 79) and the State of Tennessee incident reports (items 46 & 72) fall under the QIC privilege in Tenn. Code Ann. § 68-11-272(c)(1) or the original source exception in Tenn. Code Ann. § 68-11-272(c)(2)." (*Id.*) Defendants produced these items en camera, and the Court has reviewed them.

### A. Emails to Administrator Poston

Having reviewed the emails, the Court finds that the "original source" exception applies. The emails qualify as "documents not produced specifically for use by a QIC." *See Pinkard*, 545 S.W.3d at 448 (citing Tenn. Code Ann. § 68-11-272(c)(2)). And this Court observed before that "[o]stensibly, the sender of the emails could make the emails available." (ECF No. 170 at PageID 2658.) And so the emails are "available from original sources." *See Pinkard*, 545 S.W.3d at 448. Because the "original source" exception applies to the emails to Poston, the

4

Court **GRANTS** Plaintiff's discovery request for the emails (items 41–44, 67–71).[1]

### B. Complaint/Grievance Reports and State of Tennessee Incident Reports

As for the complaint/grievance reports (items 60 & 79) and the State of Tennessee incident reports (items 46 & 72), the Court finds that these documents fall within the scope of Tenn. Code Ann. § 68-11-272(c)(1). As this Court noted, "the statute defines 'records' broadly, including 'records of interviews and all reports, incident reports, statements,' and 'any and all other documentation generated by or in connection with activities of a QIC.'" (ECF No. 170 at PageID 2657 (quoting Tenn. Code Ann. § 68-11-272(b)(5)). Indeed, the *Pinkard* court referred to this broad QIC privilege as "problematic." 545 S.W.3d at 453. But "[a]lthough the [QIC] privilege is problematic, it does not prohibit [a litigant] from obtaining evidence that goes to the heart of the case from the original sources." *Id.* And "persons who provided testimony or information to or as part of a QIC are not exempt from discovery and are not prohibited from testifying as to their knowledge of facts or their opinions." *Id.* (citing Tenn. Code Ann. § 68-11-272(c)(2)).

Because of the statute's broad definition of "records," the Court finds that the

---

[1] If Defendants claim work-product privilege, they have not carried their burden of showing that the emails were prepared "in anticipation of litigation." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) ("A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'"). The work-product privilege, "as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *Id.* But "documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege." *Id.* (citations omitted). And so "a document will not be protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation." *Id.* at 593–94. The emails here were prepared by a State of Tennessee employee, they relate to Tennessee reporting requirements, and they would have been prepared in the same manner regardless of this litigation. The work-product privilege does not apply to the emails.

complaint/grievance reports and State of Tennessee incident reports fall within the scope of Tenn. Code Ann. § 68-11-272(c)(1). But Plaintiff asserts that Defendants created these documents because of their "legal and regulatory duties to thoroughly investigate all incidents of abuse and neglect independent of any direction of counsel or the QIC process." (ECF No. 155 at PageID 2346, 2353 (citing 42 C.F.R. § 483.12(c)(2) & (4); Tenn. Comp. R. & Regs. 1200-08-06-.11(2)). In essence, Plaintiff asserts that Defendants have a duty under Tennessee law to report incidents of abuse to the Department of Health under Tenn. Code. Ann. § 68-11-211.[2] (*Id.* at PageID 2346, 2353.) And so Plaintiff contends that because Defendants did not produce the reports "specifically" for use by a QIC, they are not protected under the QIC privilege. (*Id.* at PageID 2347 (citing *Pinkard*, 545 S.W.3d at 445–46).)

Plaintiff misunderstands the *Pinkard* court's articulation of the QIC privilege. That a document was "produced specifically for use by a QIC" does not determine whether that document falls within the scope of Tenn. Code Ann. § 68-11-272(c)(1). *See Pinkard*, 545 S.W.3d at 448, 452. Rather, whether a document was "produced specifically for use by a QIC" is one of the prerequisites for the "original source" exception to apply. *See id.* And so Plaintiff's argument does not address whether the incident reports fall within the scope of the privilege—Plaintiff argues only that the original source exception should apply.

Plaintiff later argues that Defendants created the State of Tennessee incident reports "independently from any QIC purpose or evaluation of healthcare services." (ECF No. 155 at

---

[2] Under 42 C.F.R. § 483.12, long term care facilities faced with "allegations of abuse, neglect, exploitation, or mistreatment," must "[r]eport the results of all investigations to the administrator or his or her designated representative and to other officials in accordance with State law . . . ." 42 C.F.R. § 483.12(c)(4). And the Tennessee regulation Plaintiff cites requires nursing homes to "report all incidents of abuse, neglect, and misappropriation to the [Tennessee] Department of Health in accordance with T.C.A. § 68-11-211." Tenn. Comp. R. & Regs. 1200-08-06-.11(2).

PageID 2353 (discussing 42 C.F.R. § 483.12(c)(2); Tenn. Comp. R. & Regs. 1200-08-06-.11(2)).) But this argument holds no water. As noted above, 42 C.F.R. § 483.12 requires long term care facilities to report the results of investigations into allegations of abuse and mistreatment "in accordance with State law." 42 C.F.R. § 483.12(c)(4). And the Tennessee regulation Plaintiff cites requires nursing homes to report all incidents of abuse to the Tennessee Department of Health "in accordance with T.C.A. § 68-11-211." Tenn. Comp. R. & Regs. 1200-08-06-.11(2). In turn, Tenn. Code. Ann. § 68-11-211 governs "reports of abuse, neglect or misappropriation" by health facilities.[3]

The Tennessee healthcare quality assurance statute permits many QIC functions. Tenn. Code Ann. § 68-11-272(b)(4). These functions include the evaluation, supervision and discipline of healthcare providers. Tenn. Code Ann. § 68-11-272(b)(4)(D), (I), (J). And the statute lists "[r]eduction of morbidity or mortality," and "[a]ctivities to determine the healthcare organization's compliance with state or federal regulations." Tenn. Code Ann. § 68-11-272(b)(4)(E), (O). The statute also includes "[t]he evaluation of reports made pursuant to § 68-11-211 and any internal reports related thereto or in the course of a healthcare organization's patient safety and risk management activities." Tenn. Code Ann. § 68-11-272(b)(4)(N). And so the State of Tennessee incident reports correspond to valid QIC functions. And the reports are not "otherwise available from original sources." *See Pinkard*, 545 S.W.3d at 448; *see also* Tenn.

---

[3] The Court questions Plaintiff's reliance on Tenn. Code. Ann. § 68-11-211 to obtain the State of Tennessee incident reports. True enough, as stated above, this Tennessee statute governs health facilities' duty to report "abuse, neglect or misappropriation." Tenn. Code. Ann. § 68-11-211. But this statute also provides that such reports are confidential and undiscoverable. *See* Tenn. Code. Ann. § 68-11-211(c) ("An incident report or any amended incident report obtained by the department pursuant to this section shall be confidential and not subject to discovery, subpoena or legal compulsion for release to any person or entity, nor shall the report be admissible in any civil or administrative proceeding, other than a disciplinary proceeding by the department or the appropriate regulatory board.").

7

Code. Ann. § 68-11-211(c).  As a result, the Court finds that the QIC privilege applies to the State of Tennessee incident reports, and Plaintiff is not entitled to production of these reports from Defendants.  The Court therefore **DENIES** Plaintiff's discovery request for the incident reports (items 46 & 72).

As for the complaint/grievance reports, Plaintiff argues that "[t]hey are 'original source' information created by the family and/or residents who are not part of the facility's QIC or who are working at the behest of Defense Counsel."  (ECF No. 155 at PageID 2353.)  Plaintiff's argument misses the mark.  Just because information in a document is available from an original source does not also mean that the document itself is available from that source.  As a result, the availability of the information in a document does not always speak to whether the document itself falls within the "original source" exception.  *See Pinkard*, 545 S.W.3d at 448, 452–53.

If the information in the document is available from an original source, a litigant can seek that information from the original source.  *See id.* at 452–53.  Indeed, "persons who provided testimony or information to [a QIC] or as part of a QIC [investigation] are not exempt from discovery and are not prohibited from testifying as to their knowledge of facts or their opinions." *Id.* at 453 (citing Tenn. Code Ann. § 68-11-272(c)(2)).  But for a document to fall within the "original source" exception, the document itself must be "available from an original source." *See id.*; *see also* Tenn. Code Ann. § 68-11-272(c)(2).  Nevertheless, as stated above, the QIC privilege "does not prohibit [a litigant] from obtaining evidence that goes to the heart of the case from the original sources."  *Pinkard*, 545 S.W.3d at 453.

Because the complaint/grievance reports here are not "otherwise available from original sources," they do not fall within the "original source" exception.  *See id.* at 448, 452; *see also* Tenn. Code Ann. § 68-11-272(c)(2).  As a result, the Court finds that Plaintiff is not entitled to

8

production of these reports from Defendants. And the Court therefore **DENIES** Plaintiff's discovery request for the complaint/grievance reports (items 60 & 79).

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** Plaintiff's motion to compel and therefore **DIRECTS** Defendants to produce the emails to administrator Poston (items 41–44, 67–71) within seven days from the entry of this order.

**SO ORDERED**, this 13th day of April, 2022.

        s/Thomas L. Parker
        THOMAS L. PARKER
        UNITED STATES DISTRICT JUDGE